**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| **STATE OF RHODE ISLAND**<br>**v.**<br>**KEYSPAN LNG, L.P.** | **C.A. No. 05-168S** |

**DEFENDANT KEYSPAN LNG, L.P.'S**
**RULE 12.1 STATEMENT OF UNDISPUTED FACTS**

Defendant, KeySpan LNG, L.P. ("KLNG"), submits the following Statement of Undisputed Facts as required by Local Rule 12.1:

A. PARTIES

1. Plaintiff, State of Rhode Island, is a body politic and sovereign state of the United States of America.

2. Defendant, KLNG, is a Delaware limited partnership having its principal place of business in Providence, Rhode Island.

B. THE PROJECT AND RELEVANT REQUIRED AUTHORIZATIONS

1. On April 30, 2004, KLNG filed an application with the Federal Energy Regulatory Commission ("FERC") (FERC Docket No. CP04-223 et al.) pursuant to Section 3 of the Natural Gas Act ("NGA"), 15 U.S.C. §§717b(a), and federal regulations promulgated thereunder. The application seeks authority, inter alia, to construct and operate certain facilities appurtenant to the existing federally authorized and regulated liquefied natural gas ("LNG") terminal operated by KLNG at 121 Terminal Road, Providence, Rhode Island, in order to provide the capability of receiving LNG from ocean borne vessels (the "Project"). *See* Tab 1 attached hereto.

2. The Office of the Governor of Rhode Island ("Governor") and the Office of the Rhode Island Attorney General ("RIAG") are parties to, and the RIAG, Governor

8

and Rhode Island Coastal Resources Management Council ("CRMC") have participated as commenters in, FERC Docket No. CP04-223 et al.

3. Among the facilities proposed to be constructed by KLNG as part of the Project are permanent structures to permit the berthing of LNG vessels, some of which structures will be located on approximately 450 square feet of submerged land under the Providence River. *See* Tab 2 attached hereto.

4. On August 20, 2004, KLNG filed an application with the U.S. Army Corps of Engineers ("ACOE") pursuant to §10 of the Rivers and Harbors Act of March 3, 1899, 33 U.S.C. §403, seeking authority, inter alia, to construct facilities on submerged lands in the Providence River. *See* Tab 3 attached hereto.

5. The effectiveness of the authorizations granted by the FERC and ACOE pursuant to KLNG's applications will be conditioned, inter alia, on a requirement that KLNG file documentation of concurrence from the CRMC pursuant to the Coastal Zone Management Act ("CZMA"), 16 U.S.C. §§1451 et seq., that the Project is consistent with the Rhode Island Coastal Resources Management Program or, if such consistency is denied by the CRMC, a determination by the U.S. Secretary of Commerce to override such denial.

Respectfully Submitted,

**KEYSPAN LNG, L.P.**

By its Attorneys,

Gregory L. Benik, Esq. (#1515)
John P. Walsh (#6709)
HOLLAND & KNIGHT LLP
One Financial Plaza, Suite 1800
Providence, RI 02903
Telephone: (401) 751-8500
Facsimile: (401) 553-6850

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that a copy of the foregoing was mailed to following on this 11th day of May, 2005.

**COUNSEL FOR**
**THE STATE OF RHODE ISLAND**
**PATRICK C. LYNCH**
**ATTORNEY GENERAL**

Michael Rubin, Esq. (#3656)
Special Assistant Attorney General
150 South Main Street
Providence, RI 02903
(401) 274-4400 x2116

Paul J. Roberti, Esq. (#4447)
Special Assistant Attorney General
150 South Main Street
Providence, RI 02903
(401) 274-4400 x2231

Terrence J. Tierney, Esq. (2583)
Special Assistant Attorney General
150 South Main Street
Providence, RI 02903

**COUNSEL FOR**
**CITY OF WARWICK**
**(Courtesy Copy)**

Peter Ruggiero, Esq. (#5733)
Assistant City Solicitor
Ruggiero, Orton & Brochu
20 Centerville Road
Warwick, RI 02886

**COUNSEL FOR CRMC**

Brian A. Goldman, Esq. (#3940)
681 Smith Street
Providence, RI 02908
(401) 521-4100

**COUNSEL FOR**
**CITY OF EAST PROVIDENCE**
**(Courtesy Copy)**

W. Mark Russo, Esq. (#3937)
Christopher M. Mulhearn
Ferrucci Russo, P.C.
55 Pine Street, 4th Floor
Providence, RI 02903

William J. Conley, Jr., Esq. (#2149)
City Solicitor – City of East Providence
East Providence City Hall
145 Taunton Avenue
East Providence, RI 02914

**COUNSEL FOR CITY OF PROVIDENCE**
**(Courtesy Copy)**

Adrienne G. Southgate, Esq. (#3363)
Deputy City Solicitor
City of Providence
Department of Law
275 Westminster Street, Suite 200
Providence, RI 02903

Lauren Ford

# 2838342_v1

(1)

IN THE UNITED STATES OF AMERICA
BEFORE THE
FEDERAL REGULATORY ENERGY COMMISSION

**KeySpan LNG, L.P.** ) **Docket No. CP04-___-000**

## APPLICATION FOR AUTHORIZATION OF A LIQUEFIED NATURAL GAS IMPORT TERMINAL

KeySpan LNG, L.P. ("KeySpan LNG"), pursuant to Section 3(a) of the Natural Gas Act ("NGA"), 15 USC § 717b(a), and Parts 153 and 380 of the Regulations of the Federal Energy Regulatory Commission ("Commission" or "FERC"), 18 C.F.R. Parts 153 and 380, hereby requests all of the authorizations necessary to site, construct and operate a liquefied natural gas ("LNG") terminal ("LNG Terminal" or "Project") in the City of Providence, Rhode Island. In addition, KeySpan LNG seeks authority under Section 7(b) of the NGA, 15 U.S.C. § 717f(b), to abandon certain facilities that will be replaced by proposed improvements.

KeySpan LNG currently owns and operates an existing LNG storage facility in Providence and proposes to upgrade that facility by converting it to an LNG Terminal capable of receiving marine deliveries and augmenting the facility's existing vaporization system. The proposed LNG Terminal will connect to Algonquin Gas Transmission Company ("Algonquin"), an existing interstate pipeline. It will benefit the public by providing a new source of reliable and secure LNG imports in the heart of the New England gas market, thereby diversifying the region's supply options, increasing baseload natural gas supplies to meet the growing energy needs of Rhode Island and the entire New England region, and augmenting the supply of LNG needed to fill the region's LNG storage facilities to meet peak day needs. Because much of the infrastructure needed to provide LNG terminalling service is already in place at the site, construction and operation of the LNG Terminal will have few, if any, adverse impacts on the local community or the environment.

KeySpan LNG's goal is to be in service for the 2005/2006 heating season. To achieve that goal, KeySpan LNG proposes to commence construction in the spring of 2005.



1733715 v4; 115QR04!.DOC

B. **Summary of Proposal (Section 153.7(b))**

1. Facilities.

KeySpan LNG is proposing to upgrade its existing FERC-regulated LNG receipt, storage and delivery facilities on the Providence River in Providence, Rhode Island by converting them to an LNG Terminal capable of receiving supplies of LNG via marine deliveries and augmenting the facility's existing vaporization system. The existing facilities, which typically operate on a single-cycle annual basis, provide storage service to three customers who transport LNG to the storage tank by truck and take redelivery of LNG by truck or in vaporized form for use primarily as a winter peaking supply. The upgrades will permit the facility to receive marine deliveries of LNG, to offer LNG terminalling service, and to redeliver vaporized LNG into the New England market on a baseload basis via an interconnection with the facilities of Algonquin's G-system. The new facilities are designed to meet or exceed all applicable regulations for LNG terminals and marine facilities in the United States.

Much of the infrastructure needed to provide LNG terminalling service is already in place at the site. The improvements proposed will include the installations of:

- a new ship berth in the Providence River to the east of the existing facility,
- new liquid unloading arms and a transfer line,
- new vapor return blowers to return vapor to the ship,
- a new vapor return line and loading arm,
- Boil-off Gas (BOG) compressor,
- a BOG condenser,
- a new two-stage LNG pumping system, and
- a new indirect fired vaporizer system with a capacity of 375 MMSCFD.

In addition, Algonquin will construct a short pipeline to connect the LNG Terminal to Algonquin's interstate pipeline facilities.

These additions will complement the existing 600,000 barrel LNG storage tank and the existing BOG compression system and vaporization system, which has a current

capacity of 150 MMSCFD, increasing total vaporization capacity to 525 MMSCFD. With the exception of two mooring dolphins that will be located on adjoining property leased by St. Lawrence Cement, all of the proposed new land-based facilities will be located entirely within the existing KeySpan LNG site. The berth with loading arms and piping are in the Providence River. The Project will also involve the abandonment of the existing 12-inch diameter LNG barge unloading line from the Providence River bulkhead to the storage tank to provide space for the installation of a new ship vapor return line.

Each of the proposed facilities is described in detail in Resource Report No. 13 and is briefly described below:

a. Marine Facilities The pier and berthing facilities for the proposed Project will consist of a single ship berth with mooring and breasting dolphins and a trestle. It is designed to accommodate LNG ships with cargo capabilities of 71,500 to 145,000 cubic meters. The berth will include four breasting dolphins and six mooring dolphins and will be equipped with fender systems, quick release hooks and capstans. The berth will include walkways between the dolphins and the land for personnel access and a gangway between the carrier and the platform for the transfer of crew. The trestle will provide the structural support for the cryogenic piping and utility lines from the shore to the berth. The delivered LNG will be transferred from the ship to the existing storage tank using the ship's pumps. LNG will be unloaded from the ship through two unloading liquid arms and transported from the pier through a liquid unloading line which will be connected to the existing LNG tank fill nozzle. BOG blowers will return part of the vapor generated during the unloading process to the ship through a vapor return arm. During the holding mode of operation (vaporized gas sendout when no ship is unloading), a line will recirculate LNG to the main header at the end of the pier, and LNG will return through the liquid unloading line to keep it cold.

b. Vapor Handling The existing facility's BOG compression system accommodates vapor generated due to tank and piping heat leaks, LNG truck unloading operations, LNG pump operations, and changes in barometric pressure. The existing BOG system will continue to operate as it presently does. A new BOG vapor handling system will

accommodate the vapor that is generated during ship unloading. Heat input into the system will consist of the heat generated by ship pumping, vapor displacement, and heat leak from the ambient surroundings during ship unloading. The system will use BOG compressors and blowers and a condenser for handling the vapors. The system will not discharge any vapor during normal operation. A portion of the vapor generated during ship unloading will be returned to the ship via two BOG blowers and a vapor return arm located at the end of the pier. The remaining vapor from the storage tanks generated during ship unloading will flow to four BOG compressors, where it will be compressed and sent to the BOG condenser.

c. Low Pressure Sendout Pumps The new low pressure ex-tank pumps will be vertical centrifugal pumps mounted in suction vessels. Pump discharge will normally operate at a 350 psi differential into the low pressure header to the BOG condenser. The three pumps will each be capable of sending out 50% of the baseload capacity of the terminal and the recirculation flow needed to cool down the ship unloading line.

d. High Pressure Sendout Pumps The outlet liquid stream from the BOG condenser and low pressure pumps will flow to the second stage sendout pumps. These multi-stage units will each be designed to pump the LNG to 950 psig before feeding it to the LNG vaporizers. The high-pressure pumps will be vertical canned multistage cryogenic pumps. Three sendout pumps will be installed, one of which will be a spare.

e. LNG Vaporization The LNG will be vaporized using a closed loop heated water ethylene glycol shell and tube heat exchanger vaporization system. Two vertical shell and tube exchangers will meet the baseload capacity of the terminal. Hot water ethylene glycol will be used as the primary vaporization-heating medium. Gas-fired heaters will be used to heat the water/ethylene glycol. The heaters will have low NOx burners to minimize air emissions. The outlet gas from the vaporizers will then be metered, odorized and delivered at a pressure of 900 psig and a minimum temperature of 40°F. Water ethylene glycol pumps will pump the water ethylene glycol from the heaters to the LNG vaporizers.

f. Buildings The existing control/administration building will be expanded. In addition, the Terminal upgrade will include four other buildings: (1) a BOG Compressor Building housing the BOG compressors and blowers; (2) a Heater Building housing the water/ethylene

glycol heaters; (3) a Motor Control Center (MCC) Building housing the new electrical equipment; and (4) a Berth Operations Control Room housing berth operations controls during ship unloading.

g. Control System In 1999 the facility's original pneumatic control system was replaced and upgraded with a micro-processor based control system. Operator interface stations were located in the original facility control building. This control system will be expanded to include controls for this project.

h. Electrical System To provide power for the proposed facility upgrades discussed above, a new 4160 VAC, 3-Phase, 60 Hz electric service is proposed. The existing facility's emergency generator supplies power to the existing BOG compressors, controls, lighting, and other critical requirements. Since ship unloading operations will cease during a power outage, no additional emergency generators are required for on-shore operations. An emergency power source will be provided for the waterfront facilities as required by Federal regulations.

2. Safety and Security.

The safety and security of this Project have been a priority to KeySpan LNG from its inception and will continue to be a key consideration during its construction and operation. KeySpan LNG and its predecessor, ALNG, have operated an LNG receipt, storage and delivery facility at the site for thirty years and, during that time, there have been approximately 52,000 truck deliveries of LNG to the facility and 2,900 deliveries from it without a serious incident. KeySpan Corporation, the parent of KeySpan LNG, is the largest distributor of natural gas in the Northeast United States, with 2.5 million customers. It maintains more than 12,000 miles of natural gas infrastructure and operates twelve LNG storage facilities in New England and New York, all of which have excellent operational and safety records. Similarly, BGLS together with its affiliates, is a leading importer of LNG into the United States with a long history in LNG shipping, having been involved in both the first prototype and first working LNG carrier in the industry.

KeySpan LNG and BGLS are taking all steps necessary to satisfy all Federal, state and local safety and security requirements applicable to the design, construction and operation

04/14/05 THU 11:52 FAX 4 2016 RI ATTY GENERAL CIVIL 002

*Draft Environmental Impact Statement*

# KeySpan LNG Facility Upgrade Project

**KeySpan LNG, L.P.**
**Algonquin Gas Transmission, L.L.C.**
Docket Nos. CP04-223-000, CP04-293-000, and CP04-358-000
FERC/EIS – 0173D



**Federal Energy Regulatory Commission**
Office of Energy Projects
Washington, DC 20426

**Cooperating Agencies**

US Army Corp of Engineers

November 2004

**Aquatic Resources Impacts and Mitigation**

<u>LNG Facilities Construction and Operation</u>

The project would involve installation of a new LNG berth and unloading facilities. These marine facilities would be supported by 33 steel pipe columns or piers ranging from 30 to 96 inches in diameter, which would be driven into the river bed. Together these piles would disturb and occupy about 450 $ft^2$ of the river bed. The piers would support the unloading platform, trestle, and a cement unloading dock, which in total would encompass about 6,480 $ft^2$ and be about 25 feet above MLLW. The other structures of the terminal that would be supported by the piles, including the breasting dolphins, mooring dolphins, and interconnecting walkways, would encompass 2,823 $ft^2$ and would have decks made of steel beams and gratings that would be partially open and 22 feet above MLLW. These facilities would shade the water to varying degrees. A small area of water would also be shaded temporarily by the work barge that would be used to construct the terminal facilities.

The water quality of the Providence River is currently degraded by upstream discharges and runoff. As discussed in section 4.3, stormwater runoff from the construction site could also increase suspended sediment and turbidity levels near the site. Disturbance near the water's edge by construction equipment and the resulting temporary increase in turbidity could lower fish usage in the immediate vicinity of the site. Construction of the proposed ship berth and unloading facility would also contribute to further degradation of water quality through increases in turbidity, potential releases of chemical and nutrient pollutants from sediments, and potential introduction of chemical contaminants, such as fuel and lubricants from equipment operating in and over the water. Turbidity resulting from the resuspension of sediments during pile driving could reduce light penetration and the corresponding primary production of aquatic plants, algae, and phytoplankton. Additionally, the resuspension of organic materials and sediments could cause an increase in biological and chemical use of oxygen, resulting in a decrease of dissolved oxygen concentrations in the affected area. Lower dissolved oxygen concentrations could cause a temporary displacement of motile organisms and may stress or kill sessile benthic organisms within the affected area.

The construction of a new ship berth and unloading facility, particularly pile driving, would also propagate underwater noise energy, which could harm fish or temporarily reduce fish usage of the area. Additionally, the piles driven into the riverbed to support the new terminal facilities would permanently affect about 450 square feet of benthic habitat. Benthic invertebrates provide a food source for demersal species of finfish during part or all of their life cycles. Direct alteration of the benthic substrate by pile driving would disturb the existing benthic community and could affect prey species, suitable cover, settlement structure, and/or nursery and spawning areas in the immediate vicinity of the work area.

None of the above described effects would likely be significant because only a small area would be affected by construction. Additionally, the majority of these effects would be short term and limited to the construction period. Pioneering benthic invertebrates would likely recolonize the affected area soon after completion of construction. Aquatic species that are mobile would likely avoid construction activities and temporarily relocate to adjacent areas. There are several piers and other structures both upstream and downstream of the proposed site that could be used as habitat by fish disturbed by construction activities. Additionally, when completed, the new ship berth and unloading facility would provide additional structural habitat in the project area.

Other potential effects on aquatic organisms during construction and operation of the proposed LNG facilities could include entrainment or impingement of fish during water withdrawals, mortality from toxic substances (e.g., fuel spills), increased turbidity and the resuspension of sediments during LNG vessel movements, and the introduction of invasive species by LNG ships.

Holland+Knight

Tel 401 751 8500
Fax 401 553 6850

Holland & Knight LLP
One Financial Plaza, Suite 1800
Providence, Rhode Island 02903
www.hklaw.com

Gregory L. Benik, Esq.
401 824 5104
greg.benik@hklaw.com

August 20, 2004

**VIA HAND DELIVERY**

Stephen DiLorenzo
Senior Project Manager
U.S. Army Corps of Engineers
New England District
696 Virginia Road
Concord, MA 01742-2751

Re: KeySpan LNG, L.P.
Application for Department of the Army Permit

Dear Steve:

On behalf of the Applicant, KeySpan LNG, L.P. ("KeySpan LNG"), I am pleased to submit this Department of the Army Permit application to upgrade its liquid natural gas ("LNG") terminal ("LNG Terminal") in Providence, Rhode Island.

As more fully explained and supported in the Application, KeySpan LNG currently owns and operates an LNG storage facility in Providence and proposes to upgrade that facility by converting it to an LNG Terminal capable of receiving marine deliveries and augmenting the facility's existing vaporization system. The LNG terminal will provide a new source of reliable and secure LNG imports in the heart of New England. Because it will connect to Algonquin Gas Transmission Company ("Algonquin"), an existing interstate pipeline, vaporized LNG will be available to meet the growing energy needs of Rhode Island and the entire New England region.

The enclosed Application consists of the following volumes:

- Volume I – Transmittal letter, Application, Plans, and Berth Analysis;
- Volume II-A (Resource Report 1-3);
- Volume II-B (Resource Report 4-12);

- Volume II-C (Resource Report 13); and
- Volume III (Critical Energy Infrastructure Information).

Please note that a detailed project description and purpose is provided in Resource Report 1. Photographs showing the project site is provided in Appendix 1-C in Resource Report 1.

Volume III contains Critical Energy Infrastructure Information, the disclosure of which is governed by applicable federal law. As such, this volume is marked "Contains Critical Energy Infrastructure Information – Do Not Release" and should be disclosed only in accordance with Department of the Army requirements.

Finally, I enclose a copy of this letter for date stamping to be returned by my messenger.

Sincerely yours,

HOLLAND & KNIGHT LLP

Gregory L. Benik, Esq.

GLB: mc
Enclosures

APPLICATION FOR DEPARTMENT OF THE ARMY PERMIT
(33 CFR 325)

OMB APPROVAL NO. 0710-0003
Expires December 31, 2004

The Public burden for this collection of information is estimated to average 10 hours per response, although the majority of applications should require 5 hours or less. This includes the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to Department of Defense, Washington Headquarters Service Directorate of Information Operations and Reports, 1215 Jefferson Davis Highway, Suite 1204, Arlington, VA 22202-4302; and to the Office of Management and Budget, Paperwork Reduction Project (0710-0003), Washington, DC 20503. Respondents should be aware that notwithstanding any other provision of law, no person shall be subject to any penalty for failing to comply with a collection of information if it does not display a currently valid OMB control number. Please DO NOT RETURN your form to either of those addresses. Completed applications must be submitted to the District Engineer having jurisdiction over the location of the proposed activity.

PRIVACY ACT STATEMENT

Authorities: Rivers and Harbors Act, Section 10, 33 USC 403; Clean Water Act, Section 404, 33 USC 1344; Marine Protection, Research and Sanctuaries Act, 33 USC 1413, Section 103. Principal Purpose: Information provided on this form will be used in evaluating the application for a permit. Routine Uses: This information may be shared with the Department of Justice and other federal, state, and local government agencies. Submission of requested information is voluntary however, if information is not provided the permit application cannot be evaluated nor can a permit be issued.

One set of original drawings or good reproducible copies which show the location and character of the proposed activity must be attached to this application (see sample drawings and instructions) and be submitted to the District Engineer having jurisdiction over the location of the proposed activity. An application that is not completed in full will be returned.

*(ITEMS 1 THRU 4 TO BE FILLED BY THE CORPS)*

| 1. APPLICATION NO. | 2. FIELD OFFICE CODE | 3. DATE RECEIVED | 4. DATE APPLICATION COMPLETED |
|---|---|---|---|

*(ITEMS BELOW TO BE FILLED BY APPLICANT)*

| | |
|---|---|
| 5. APPLICANT'S NAME<br>KeySpan LNG, L.P. | 8. AUTHORIZED AGENT'S NAME AND TITLE (an agent is not required)<br>Gregory Benik, Esq. |
| 6. APPLICANT'S ADDRESS<br>30 Kennedy Plaza<br>Providence, RI 02903 | 9. AGENT'S ADDRESS<br>Holland & Knight LLP<br>One Financial Plaza, Suite 1800<br>Providence, RI 02903 |
| 7. APPLICANT'S PHONE NO. W/AREA CODE | 10. AGENT'S PHONE NO. W/AREA CODE |
| a. Residence<br>b. Business 401-785-4590 | a. Residence<br>b. Business 401-824-5104 |

11. STATEMENT OF AUTHORIZATION

I hereby authorize, Gregory Benik to act in my behalf as my agent in the processing of this application and to furnish, upon request, supplemental information in support of this permit application.

[signature] 8/20/04
APPLICANT'S SIGNATURE Date

NAME, LOCATION, AND DESCRIPTION OR PROJECT OR ACTIVITY

12. PROJECT NAME OR TITLE (see instructions)
KeySpan LNG, L.P. Plant Upgrade Project

| | |
|---|---|
| 13. NAME OF WATERBODY, IF KNOWN (if applicable)<br>Providence River | 14. PROJECT STREET ADDRESS (if applicable)<br>121 Terminal Road<br>Providence, Rhode Island 02905 |
| 15. LOCATION OF PROJECT<br>Providence (COUNTY) Rhode Island (STATE) | |

16. OTHER LOCATION DESCRIPTIONS, IF KNOWN (see instructions)
The Project Site is on the west side of the Providence River near Sassafras Point.

17. DIRECTIONS TO THE SITE
Interstate 95 to Thurbers Avenue Interchange
Right onto Allens Avenue (U.S. Route 1A) (south bound)
Make left onto Terminal Avenue. The Site is located at 121 Terminal Avenue.

J.App. 00044